The next case is 123-990, Nichols v. Fahrenkamp, Agenda No. 4. Mr. Green, if you're ready, you may proceed. Good morning, Mr. Chief Justice, and may it please the Court. My name is Kevin Green, and I represent the appellants, David Fahrenkamp and the Fahrenkamp Law Offices. The question presented is whether a guardian ad litem should enjoy immunity from negligence claims in the same way that the court that appoints him does, and for the same reasons. The majority of the appellate court panel rejected the weight of authority when it answered this question in the negative, and its decision should be reversed for three reasons. First, the decision radically alters the traditional role of the guardian ad litem, which is to act as a court's agent, not as a ward's attorney. Second, the decision creates an unworkable case-by-case immunity analysis that needlessly tries to distinguish probate from custody proceedings, and that conflicts with the public policy behind immunity. The result will divert the guardian ad litem's energies towards anticipating lawsuits. It will lead to second-guessing and a hindsight analysis, and it will likely dissuade counsel from accepting guardian ad litem appointments, or increase their fees for doing so, or both. Finally, immunity neither deprives the ward of a remedy, nor gives the guardian ad litem a free pass, because the safeguards against misconduct and the ward's remedies are already numerous. Now I want to start by discussing the role of the guardian ad litem. The appellate court found that Mr. Fahrenkamp's role as a guardian ad litem was essentially to act as a second plenary guardian, to protect the plaintiff's assets, and to act as her advisor, advocate, negotiator, and evaluator. Plaintiff likewise argues that Mr. Fahrenkamp's role, quote, was to represent plaintiff, similar to any other attorney representing the client. The appellate court decision and the plaintiff's reasoning is at odds with this court's explanation of the traditional role of the guardian ad litem, which is to assist the court in performing the duty that it has to protect the minor's interests. This court has explained recently in the In Re Mark W case that the minor is the court's ward, and that the court is charged with the duty to protect the interests of the ward, and to, quote, vigilantly guard the ward's property. In that case, this court explained that the court can appoint a guardian ad litem to assist the court in performing its duties, and that the guardian ad litem is considered the court's agent, acting as its eyes and ears, and not as the ward's attorney. That case also explained that the guardian ad litem, when he is appointed in the absence of statutory authority, quote, the traditional role of the guardian ad litem is not to advocate for what the ward wants, but instead to make a recommendation to the court as to what is in the ward's best interest. The court continued to explain that the role of the guardian ad litem is thus in contrast to the role of the plenary guardian of the person appointed pursuant to the Probate Act. So although the guardian ad litem is providing a recommendation to the court, the court is free to accept that recommendation, reject it, require additional information, require further investigation before the court carries out its job to decide what is in the child's best interest and how to best protect the child. In reaching its decision here, the appellate court fundamentally altered that role, from an arm of the court making a recommendation to an attorney and an advocate for the minor. The appellate court essentially merged the role of the guardian ad litem with the role of the plenary guardian, who is a fiduciary to the minor, who is charged with protecting the minor's interests and caring for the minor's estate. Does it make any difference who paid the guardian ad litem? I don't think it makes a difference because, in most cases, the guardian ad litem is going to be paid out of the estate, if we're talking about an estate matter. And so the fact is that the court knows going in, before it makes the appointment, who is going to be paying for the guardian ad litem. I think what the appellate court decision also does is it reverses how it should work in the order of appointment. Here, the order of appointment for the guardian ad litem was silent about his responsibilities. And the appellate court's reasoning means that, in that silence, we should imply that the guardian ad litem was appointed to be the ward's attorney. This guardian ad litem was appointed under the authority of the inherent power of the court. Is that correct? That's right, under the common law authority to appoint a guardian ad litem. So I think the reasoning of the appellate court has it backwards. Because this was a common law appointment, it seems to make the most sense that we should find that a common law appointment for a guardian ad litem is a traditional role, guardian ad litem, that is to be the arm of the court, to provide recommendations to the court and not to act as the ward's attorney. Counsel, where does the idea of immunity come from, whether it be total or partial? I mean, is that statutory? Is that common law? And how does the judge have an opportunity to say, does the judge ever say you have immunity to a GAL? So the source of the immunity is from the common law. It goes back to the centuries-old judicial immunity, which is found in the common law. So it derives from judicial immunity. Right, and the case law speaks of quasi-judicial immunity for officers or agents of the court. And the judge, I don't think, has to tell the guardian ad litem that he has immunity, since it is found in the common law. Now, I think if the judge assigns an extra role to the guardian ad litem, so if the judge were to expressly state, I'm also appointing you to be the ward's attorney, perhaps that immunity would not apply, because at that point the guardian ad litem is no longer the agent of the court. He's expressly charged with being the ward's attorney. And I think the In Re Mark W case shows us that point as well, because there the guardian ad litem was accused of not acting as the ward's attorney, and this court said, no, he was not appointed as such, and so therefore he has the traditional role of the guardian ad litem to be the arm of the court. And in my view, this is similar to as if the court had appointed a special master to help it decide some issue it had to decide. Usually that's more of one discrete issue when a special master is appointed, but the idea is the same. Here we have an arm of the court being appointed to help the court carry out its duty over a course of time to determine how to protect the child's interests, what are the best interests of the child, how can the court perform its duties and perform its function. And so the policy behind the immunity, the judicial immunity and the quasi-judicial immunity, is to allow the efficient administration of the court system and to allow the court and its officers and agents to make its decisions and its recommendations with independence, without compromise, without any clouded judgment or fear that someone might sue them later because they don't like the decision that they've made. The U.S. Supreme Court has explained that the immunity is not for the benefit of the person who might abuse it, but it's for the benefit of the public, and with this immunity specifically for the benefit of children, whose interest it is that the judges and their agents should be at liberty to exercise their functions with independence and without fear of consequences. So when it comes to the arms of the court, we want the court's agent to be able to make a neutral assessment that's free from harassment or undue influence. We want the guardian ad litem not to focus on who might sue me in the future, which might cloud his judgment, which might make his recommendation not something for the child's best interest, but something for the guardian ad litem's best interest. What decision might be the least controversial might become the key if he knows he's subject to being sued in the future. Now the appellate court... So what's the penalty for a GAL that doesn't perform the duties that the court has asked? So there are several safeguards in place that sort of would deter misconduct. I think there's a couple right off the bat where the guardian is the arm of the court. He's subject to the court's oversight. So everything he's doing is telling the court, and the court is deciding how to proceed. So if the court doesn't like what the guardian ad litem is doing, the court can remove him. Any of the parties can move to remove the guardian ad litem. There's also, as an attorney, he's also subject to ARDC discipline. And I think the guardian ad litem also has an incentive, if he wants to continue being appointed to these roles in the future, to do a good job. There's also another safeguard on misconduct, and that is the scope of immunity. The reach of the immunity doesn't reach conduct that exceeds the scope of the appointment. So if the guardian ad litem were to engage in self-dealing, for example, or stealing the assets for personal gain, that would not be subject to the immunity, because that would be outside his role as an agent of the court making recommendations to the court. So there are safeguards in place. Let's go back to the appointment itself. If I've got the information correct in the record, there's a simple one sentence, written order, February 24, 2004, then appointed to GAL, and it says, for the minor child. Now, was there a written motion that generated that, or was it just sort of the usual protocol? There's no written motion in the record, so my understanding, it was a usual protocol. And my argument is that in that situation, it's a common law appointment, and without more, the rule should be that that is an appointment to be the traditional arm of the court. Well, in what statute would it have been authorized under? There was no statutory authority here for the appointment of the guardian ad litem. Not the Probate Act? No, the Probate Act doesn't talk about this situation where assets from an estate are being dispersed. The Probate Act talks about a proceeding to appoint a guardian, and that would get statutory authority, but that was not the case here. Here the guardian was appointed actually the same day as the guardian ad litem. So this was not an appointment for a proceeding to determine if a guardian should be appointed, which is what the Probate Act speaks to. And both the trial court and the appellate court recognized that this was a common law appointment, and the In Re Mark W case found that that appointment, that the court does have the inherent power to make that appointment to help the court assist in performing its duties. Counsel, following up on Justice Gilbride's question, is it the custom and practice of the court to appoint a GAL plus a guardian in a settlement agreement, say a personal injury case like the one before us, both people? Is that usually it? Because doesn't the guardian have to submit a report once a year to the court anyway? So what was the purpose? Or the order that Justice Gilbride described doesn't give any duties and responsibilities, so what is it? What was the duties of that particular GAL? So I think the duties of that particular GAL flowed to the court, because it was the court's duty at the end of the day, for example, to approve the settlement. The settlement order approving, the order approving the settlement agreement said that any future disbursements. Did that come after the order approving the settlement? Did the, I'm sorry, did which one come after? The appointment of the GAL. No, the appointment of the GAL did come first, and the GAL did approve the settlement agreement. And then the court approved the settlement agreement and said that any future disbursements are subject to court approval. And so there was an anticipation of future activity by the court, because every transaction where the guardian wanted to disburse money had to be approved by the court. The guardian? The guardian, yes. And then the GAL, did the GAL have any interplay with the guardian with regard to approval of disbursements? The GAL did have conversations with the guardian's attorney. There was a letter sent to the GAL for one of the disbursements by the guardian's attorney. And so then the GAL approved the disbursement, and then the court approved each disbursement. And it looks like from the record that there were three disbursements sort of when the minor was around 17 years old, where there was no GAL involvement. And so it looks from the record. So the GAL was appointed by the court, and that didn't, it wasn't at the end of the GAL's work, right? The court didn't dismiss the GAL. Right. There's no dismissal order by the court. However, the court did not wait for a recommendation from the GAL in those latter disbursements. I'm just wondering, are there duties with regard to that for the GAL in every case? Because it didn't seem like on the order there was anything, the responsibility of the GAL. I think the question is getting at not necessarily are there duties, because I think the duty is to the court. And I think the question is what tasks maybe should have been performed to comply with that duty. Was the duty to the court to anybody? I'm sorry? There was no directions for the GAL. Right. So I think because of the absence of direction, the guardian ad litem should be a common law, traditional role guardian ad litem making recommendations to the court about what he thinks is a child's best interest. And so how does he perform that might be a different question. And if we're going to look at whether he adequately performed the task that should have helped him accomplish that duty to the court, then we're going into the question of breach, potential breach of duty. And the immunity presupposes a breach, shields a breach of negligent activity. And so if the duty is flowing to the court, we don't need to necessarily get into whether he inadequately performed or adequately performed or if he should have met with a child more or less or what he should have done not to breach that duty because the duty, again, is to the court. Counsel, there's Supreme Court Rule 907, and it prescribes the minimum duties and responsibilities of attorneys for minor children. Does that play or figure in any way in this case? As we mentioned in our reply brief, I'm not sure that that rule applies to this common law, guardian ad litem appointment. You all know better than I whether that applies. But I think if it does apply, what I think Rule 907 does is, again, it talks about the tasks that should be performed. And so if we're talking about whether the tasks described in Rule 907 were done adequately, we're again getting into the question of whether there was a breach. But the rule does not say that it does not divert the duties away from the court, and it certainly does not eradicate the judicial immunity, the common law immunity. So if Rule 907 provides us any insight, one, Rule 907 distinguishes between an attorney for the child, a child representative which has advocacy roles for the child's interests, and the guardian ad litem. So it suggests there's three different approaches to a minor, to cases where this type of person is appointed. And the guardian ad litem under the Marriage Act, for example, is only making recommendations to the court, similar to what we are arguing the traditional common law role would be. Now, the appellate court tried to distinguish this case and the cases finding immunity for guardian ad litems by saying, well, those cases only apply to custody or to divorce proceedings, and this should be a distinction, because it seems that there's an underlying assumption there that probate proceedings are not adversarial, typically. I'm not sure where that assumption lies, because, you know, there's the Clark case, for example, showing a property disbursement where minors have interest in a proceed quickly becoming adversarial, and one party accusing the guardian ad litem of advancing the other party's interest and not the minor's interest. So there's case law replete with money issues. When someone's deciding how to spend someone else's money, there's the clear risk of some adverse interest being involved, whether it's the risk of someone who's requesting the money being upset or someone whose money it is being requested, or perhaps a third party who's owed that money. And I think the assumption that probate proceedings are not typically adversarial is contradicted by the fact that the court has to stay involved all along the way at every step. The court has to approve every transaction, and the court has a duty to watch over the minor, because it seems to be a recognition of the reality that there will be adverse interests at play when, again, when you're distributing someone else's money. Mr. Green, the $600,000 settlement, was that solely for this minor? Yes. And I don't know if I got this right, but I made a note that the net settlement proceeds were like $273,477. Right. What did the balance go for? There is a breakdown in the record. There were attorney's fees and liens, primarily, and costs from the underlying representation. So, yeah, the net fund was about $270,000, and then that's what the court approved as a settlement with disbursements, again, to be subject to further court approval. And so the distinction between probate and custody seems to be an unclear or false distinction, and I think that the rationale underlying the immunity has led cases to find quasi-judicial immunity applicable to guardian ad litems in several cases outside of that context that we cited in our brief. There's a Jones case, for example, in the Seventh Circuit, which was about the maladministration of the father's estate. There was a Joukowsky case in the Northern District of Illinois, which involved incompetency proceedings where the guardian ad litem was immune. There's a Zvonka case, which we cited from the Northern District of Illinois, which was an offshoot of the Cushing case that the plaintiff relies on, and that was the underlying case there was the wrongful death and negligence action. And so there are, and we cited several other from other jurisdictions, finding guardian ad litems immune from negligent claims outside the custody and the divorce proceeding. But again, I don't think the distinction is a real distinction. I think both proceedings have the real risk and the threat that someone may be dissatisfied by the guardian ad litem's decisions. And the rationale for providing the immunity is to prevent the decisions from being clouded by that fear. You know, Justice Goldenhirsch made the point that removing immunity here has real adverse practical consequences. So plaintiff argues that there's no immunity needed because all the guardian ad litem has to do is show he exercised reasonable care. But we all know that's no easy or inexpensive task. He's been, Mr. Fahrenkamp has been litigating this case for five and a half years. He made $300 for his services here. Is someone in his shoes going to accept the appointment to be a guardian ad litem knowing he's subject to $80,000 in liability and punitive damages and attorney's fees to make the $300 fee he made? If he does accept that appointment, is he going to increase his fees? Alternatively, for each disbursement request, is he going to make sure he's covered? So when he gets a request, is he going to send out written discovery and send out notices of deposition and conduct witness interviews and demand a hearing so he has cover from the court even more than he should have? Counsel, isn't that part of what someone does if they're a lawyer? I think if someone is a lawyer for the attorney. If he makes that decision, he doesn't base it on how much he's going to charge. It's based on what he needs to do for the minor. Well, I think it might lead into both here because, again, he's not the minor's attorney here. He's the court's arm. So I think he needs to take into account the effect of depleting the assets of the minor here. And if the judge knows that the costs and the fees are going to increase, will he even hesitate to appoint the guardian ad litem in the first place? And so because of these risks, we ask that the appellate court be reversed. Thank you. Thank you. Excuse me. It is the clerk's station. It's not working. I guess we're having a problem with the light. So if I don't notice it, make a signal of some sort. You have 20 minutes. All right. Thank you. May it please the court, my name is Michael Bloatvogel. I represent Alexis Nichols. There are a few points from counsel's presentation I want to respond to first, and I'll get into the body of my argument. The first is sort of the source of the guardian ad litem's appointment. And until I saw the reply brief, my understanding was always that the guardian ad litem had been appointed via the Probate Act. And, in fact, there is a statute that was cited by the appellate court in its decision, I believe is applicable. It's 755 ILCS 5-11-10.1. That's to be in any proceeding for the appointment of a standby guardian or a guardian. Here we had the appointment of a guardian in this proceeding at the proceeding. The court may appoint a guardian ad litem to represent the minor in the proceeding. I believe the guardian ad litem was appointed pursuant to the Probate Act. And another reason I always had that belief is the underlying case was a probate case. I believe the case is, the original case where all this conduct takes place, has a caption of 04-P-139. All of those proceedings by which the settlement was dispersed that we're talking about are in a probate matter. That will be more important when we get to the Rule 907 question. But the other point that I think needs to be addressed is, what is the role of a guardian ad litem? And as the court notes, the order was certainly not specified in the order appointing Mr. Fahrenkamp. And I believe the appellate opinion below correctly cites what the duty of the guardian ad litem is. And I will not, I will spare you a reread of the entire brief, but there are passages starting on page 30 where we set forth what those duties are. And, for example, the Rom case states, it is the duty of such guardian to call the rights of the minor to the attention of the court to present their interests and claim for them such protection as under the law they're entitled. Later on, I quote the appellate opinion below, which is quoting the Dolores case, the In re Mark W case that states, the guardian ad litem's role is not to advocate for what the ward wants, but instead to make a recommendation to the court as to what is in the ward's best interest. You know, and the other case I'll talk about briefly is, you know, the Ott case that states the guardian ad litem's role is to proceed on behalf of the minor in the pending lawsuit and operates to derogate and relieve any other person's authority to do so. It goes on to say the guardian ad litem was the sole representative of the minor and exclusive power to direct, manage, and control the lawsuit on behalf of the minor. And the other passage that's important from the brief that I want to highlight in this section is where we quote the Simpson v. Simpson case, which is quoting from corpus juris secundum back in 1930 that states, at the end, if in consequence of the culpable omission or neglect of the guardian ad litem, the interests of the infant are sacrificed, the guardian may be punished for his neglect, as well as made to respond to the infant for the damage sustained. That's important for a few reasons. One, it shows this is not just some stray South Carolina case. It's quoting from corpus juris secundum. It also tells you that going back to at least 1930, the common law understanding was the guardian ad litem could be liable for negligence. So this idea that if we hold a guardian ad litem liable for negligence, all bets are off, guardian ad litem won't represent plaintiffs, and a whole host of terrorists will follow, it's contradicted by reality. It has historically been the case that they do not have immunity. They can be liable for their negligence. Guardians ad litem have still functioned. Going back to my larger point, the appellate court understood, and this case law supports what the appellate court said, the attorney is acting on behalf of the minor. Now, they cite cases that say, well, the attorney doesn't always have to do what the minor wants. I would agree. So the attorney's duties to any minor are going to be slightly different than they would to an adult, competent client. Nevertheless, the guardian ad litem's role is to stand on behalf of the child, and it makes sense within the context of this case, too, because we already have a guardian. So then the question is, well, what is the role of the guardian ad litem? Well, their role is to represent the best interests of the minor. Is the duty of the guardian ad litem to the court? I would believe it's to both, to the court and to the minor, and I think that plays out in this case in this way. If the guardian ad litem is the attorney for the minor, and the minor wants something that the guardian doesn't think is in the minor's best interest, isn't there a conflict there? I don't believe so in the sense that if you look to the roles of professional conduct, they also discuss kind of these situations where if you're an attorney and you have a client who's either because of minority or disability or what other people are making the right decisions, you don't necessarily have an obligation to do whatever they want. You may have a duty to go to the court to seek a guardian to seek. In a normal situation, if you're the attorney, to seek the guardian ad litem in that context. I don't think that arose here, though. The best interest of the child is what the GAL is looking for, right? Correct. On behalf of the court. And since in this case, can we presume that the guardian that was appointed by the court might not always have the best interest of the child at hand, and that's why you need the GAL to be an independent? Exactly. Exactly. You need the GAL because you don't necessarily know that the guardian will look out for the best interest of the minor. Even though their job is to be representing or do the best interest. That the guardian is, yes. Yes. So the guardian ad litem effectively is functioning as an advocate for the client. I suppose a conflict could arise. No conflict arose here. Most likely because of the affidavit of my client that shows she never actually conferred with Mr. Ferencamp. But the court is looking to that GAL. Their duty is to tell them what is in the best interest of the minor. As the opposing counsel points out, the court is free to accept the affidavit. Just like the court would be free to accept my recommendation in any proceeding where I'm representing a client. I can say this is what is in my client's interest. I oppose the motion to continue. I'm fine with the motion to continue. The court can do whatever it wants, even if all the litigants are on the same side of an issue, which I think shows the distinction between what the court is doing and what the guardian ad litem is doing. The guardian ad litem, especially in this context, is not functioning as some sort of special master or arm of the court. Like they might be in a dissolution proceeding where you have two adult adversaries as parties in the litigation. Here they're not appointed to tell the court what's the best custody plan or what's the best way to proceed with the dissolution, where they're effectively almost more like an expert. Here their role is to stick up for the child and make sure the child's interests are protected. Aren't they supposed to do that under the Marriage and Dissolution of Marriage Act also? They are, but the difference is that in that case they're supposed to take the best interests of the minor in mind, just like a court-appointed psychologist would or anyone else. But they're doing so in the context of adult adversaries on both sides. Here we don't have a built-in adversarial relationship. The reason you need immunity. Those guardian ad litems are entitled to immunity, right? They are. Is it consistent to say that you don't get it under the Probate Act, but you do under the Marriage and Dissolution Act? I don't think it is inconsistent, and the reason is the rationale in the dissolution cases has been we do not want these guardians ad litems subject to harassment by an aggrieved parent. Isn't that equally possible under the Probate Act? Any time you're talking about money, aren't you talking about people can be upset with how it turns out? I think it is significantly less likely. I can't say it's impossible, but I think it's significantly less likely than a context where you have aggrieved parents on each side of the litigation. In that context where you've got aggrieved or you have adults on each side of the litigation, there's a very strong likelihood that whatever the GAO recommends, at least one of the parties in that lawsuit will be unhappy. In the context with a minor, like in this case, there's no necessary reason the minor will be unhappy with what the guardian ad litem does. They're not making that in a situation that has a built-in conflict. You know, it's certainly possible Alexis could have agreed to what her mother was suggesting had the guardian ad litem conferred with her, depending on what the mother was suggesting, I guess, is the other point. Counsel, can I go back to your earlier statement? You did say you believe the appointment was under the Probate Act. Yes. Were you talking about 5-11-10.1? That is where I thought the authority was stemming from. And that language specifically says, may appoint a guardian ad litem to represent a minor in the proceeding. Yes. Yeah. So isn't it limited to what happens in the proceeding? Because there was a guardian appointed, and the guardians represent the interests of the war. Well, there were both in this instance. There was a guardian appointed, and then there was a guardian ad litem. And I believe the order appointing the guardian ad litem, as sparse as it was, I believe said, to represent the minor. Yeah. So in my mind. But what is the guardian supposed to do? Isn't the guardian supposed to be the guardian and manage affairs for the investors of the war? One would think. And I guess the guardian ad litem's role is an additional protection over the guardian. And here it's kind of highlighted by the guardian has an attorney in these proceedings, a separate attorney from Mr. Ferencamp. And then the court's appointment of Mr. Ferencamp as guardian ad litem, I think, is a further signifier that his role is basically to watch out for Alexis. And they're saying that perhaps the guardian may not always be watching out for Alexis. Let me ask you this. When the guardian was appointed, was a bond filed by the guardian to safeguard her duty? I believe so. I am not certain on that point. So presumably there's no action against the bond for breaches, guardian duty. Presumably, although Alexis did attempt to proceed against the guardian, and the bond never seemed to be invoked in that proceeding. And that actually feeds into an additional point I have on why I think the guardian ad litem was at least perceived as the attorney, or supposed to be acting as the attorney for Alexis in this matter, is the way the circuit court handled the lawsuit against the guardian, where she repeatedly says, why is she, the parent, the only defendant in this lawsuit, where she states, in the order, that she's not going to look at the orders that made the disbursements, because there is a guardian ad litem representing Alexis. Certainly the circuit court at all times thought the guardian ad litem was supposed to be acting for the best interest of Alexis, that he had duties to Alexis, and that if he's signing off on these things, that means the disbursements must be appropriate. And I think that also speaks to the idea that until now no one has thought of the GALs as the arm of the court. They're thinking of them as someone who's supposed to be acting for the minors that they represent. And I think that's important for another reason, which is because we don't have any case in Illinois expressly stating that GALs have immunity in these probate proceedings, that means we're presented with an issue of first impression, which has two implications. The first I've already spoken to a little bit. We know that even though there's never been an appellate case expressly stating these GALs have immunity, there hasn't been a crisis. GALs have still been appointed. There's no indication that they're charging inflated fees. There's no indication that they're doing far more than they would be required by their duties. There's also, and I think it's important, this is the first case I'm aware of that has this fact pattern in Illinois where someone is alleging a dissipation of assets. That tells me most GALs are doing their jobs appropriately and are not being subjected to lawsuits or harassment. Yeah. Are all GALs appointed in this situation attorneys? No, I don't believe so. And that's pointed out in the amicus brief that theoretically you can have non-attorneys appointed in this role. So in those cases, since there's two classes of GALs, attorneys and non-attorneys, the attorneys would be subject to ARDC proceedings if they were violating their duties. But what is the penalty for those non-attorneys? Well, exactly. There would, as far as I can tell, there would be nothing. I think even the ARDC threat over the GALs is fairly hollow because that depends on the ARDC having the resources to investigate all these things. And the ARDC still can provide compensation to whoever was briefed. But you're exactly right. Well, legal malpractice insurance. I mean, that's the other one that an attorney would have is legal malpractice where a non-attorney would not. Right. And unfortunately, not all attorneys carry insurance, which is another thing. There's no requirement as a condition of being a GAL that the attorney show that they do, in fact, have the insurance. But for a non-attorney, you know they're not going to have legal malpractice insurance. You can't report them to the ARDC. So immunity would protect them, and there's no remedy and no necessary accountability to them. And I want to address another point that counsel raises. Well, if they know there's no immunity, they might really think about that as they're working the file, which in my mind would be the appropriate response. It's the same way any lawyer handles any file is, well, I know one reason I should work the file is because potentially I could be subjected to a malpractice suit. So that does mean Mr. Fahrenkamp, for example, upon seeing a request to disperse funds from the mother saying, I need these funds for X, Y, Z reason, would feel compelled to at least at a minimum call Alexis and say, does this match with what you've seen on the ground? Like she says she needs expenses for cheerleading. Are you in cheerleading? Or whatever the case may be. At a minimum, it would motivate the GALs to do what they're supposed to do. And, again, we've never had a case expressly stating they have immunity, but we have no evidence of what I guess would be called like defensive lawyering where they're working the file way beyond what you would ordinarily expect from reasonable care. Who sets the fee? Who sets the fee? Who sets the guardian ad litem's fee? I believe it's the court. So every time the guardian ad litem. So does the guardian ad litem then present a bill of their hourly rate and how much time they put in it? Exactly. So that's how it's fixed in this case? Yes, absolutely. So that would be another check on defensive lawyering would be if the court said, why did you take five depositions to verify this $200 ask? The court could shoot down the fee if that seemed excessive. It does motivate the attorney to exercise reasonable care, but I would submit, again, that is a good thing. Yeah. You know, I think principally this goes back to a choice of who we want to favor here. You know, since this is an issue of first impression, at worst for the plaintiff in this case, there's never been an appellate court decision expressly finding immunity for this court to extend immunity to this type of case. That is an extension of the immunity. The court can choose between protecting the minors, like Alexis who says she was never interviewed by Mr. Fahrenkamp, never even had a phone call with Mr. Fahrenkamp, didn't know he was her GAL until long after the GAL proceedings had terminated. You can protect the minors, or you can protect negligent attorneys. Now, again, you don't need immunity for non-negligent attorneys. They already have that immunity. They can say, I exercise reasonable care, here's my proof I exercise reasonable care, and that dispenses with lawsuits. And, again, I guess theoretically there could always be frivolous lawsuits, but we have 100 years approximately of experience with GALs not having immunity where we have not been overrun with frivolous lawsuits. Again, this is the only case of this fact pattern any of us could find in the state of Illinois. So choice really comes down to holding GALs accountable in every way possible in protecting the minors, or holding that they are not accountable, and that the minor has to take extraordinary measures maybe after they reach majority to try and possibly remedy what has happened to them. In my mind, public policy favors saying GALs have the same duty that all attorneys have, and that this Court will, to the extent there is a judgment call to be made, will stand on behalf of the minors. Yes. Excuse me. Is it your argument that because there are no cases, it's always been there is no immunity? Correct. In the probate context, yes. Couldn't an inference be that there's never been an attempt to file a suit because immunity was assumed? I suppose that inference could be made, but I guess the other competing inference is no person has felt aggrieved by the conduct of the GAL, and I guess we don't necessarily know which way it was. But what we do know is no one has felt aggrieved by a GAL, brought that case, and then had a court say there is immunity. And we do have that corpus juris secundum reference from way back in a 1930 case strongly intimating there is no immunity, and the GAL is liable in damages for their conduct. So until there is an Illinois case expressly stating otherwise, I think all the judges in this case and all judges and attorneys have acted on the assumption there is no immunity, and theoretically someone could be liable for their malpractice. And I think that has been the law, and I think that should stay the law. If there are no more questions, I am concluded. Thank you. Thank you. I'd like to start with a follow-up to Justice Garmon's question earlier in the argument. Is there a duty to both the child and the court? And if we're going to give a duty to both the child and the court, won't that create the potential for a conflict of interest? And it seems the answer to that question is yes, if the child wants X, but the child's best interest is Y. And the guardian ad litem has a duty to tell the court what the child's best interest is, but he has a duty to the child. What's he to do? And that's what Idre Mark W. shows us is without an express appointment to be that ward's attorney, we should not assume and make him that attorney by implication from a silent order. It seems that the plaintiff's argument, he said that the guardian ad litem is extra protection over the guardian. Well, the extra protection over the guardian is the court. It is the court that is charged with the duty to protect the child and to vigilantly guard the child's property. And so it is the court that appoints the guardian ad litem to help the court perform its own duty over the extra protection over the guardian. The guardian also had an attorney, her own attorney, who also received money from the child's estate, much more money than the guardian ad litem, by the way. So there are extra layers of protection over the guardian, but the guardian ad litem is the court's arm, the court's eyes and ears, because the court is the one charged with overseeing the guardian and the guardian's request for disbursements. There is a question about what is the source of the appointment, and I think Justice Kilbright touched on our interpretation of the statute that was referenced. This was not a proceeding to appoint a guardian where he was appointed. This was an appointment of a guardian ad litem following the appointment of the guardian, following the disbursements from the settlement account. And the trial court in the underlying case even explained that A17, the appendix 17, the authority for the appointment of the guardian ad litem comes from the common law. So it was understood that this was a common law appointment, but again, I don't know that the source necessarily changes things, because whether it's under the Probate Act or the common law appointment, it was a traditional guardian ad litem appointment to help the court function, perform its functions. Finally, the plaintiff said that she has to go through extraordinary remedies to correct what's been done, and I think that overlooks several available remedies she had. The appellate court said there was no way for her to achieve relief for what she says was negligent conduct by the guardian ad litem, but there were at least five ways I think she could have changed the result here. First, when she turned 18, she signed an affidavit saying she reviewed the account, she agreed that it should be closed. She could have objected to closing the account. If that was entered over her objection, she could have appealed that order. Now, within two years after that order was entered, the Dakota Civil Procedure gives her a procedure by which she could have moved to set aside any of those disbursement orders. It's 2-1401. She could have set aside those judgments, and she could have done that within two years after turning 18, because that section tolls the two years until you reach the age of majority. So she could have had the court review its prior orders in the underlying probate case in the first instance. And then she could have, and she did sue the actual guardian, who was her fiduciary, and the court found that the guardian did not breach her fiduciary duties, so she could have appealed that order. And I think this emphasizes, again, the duty of the guardian litem is to the court. It is the court's job to protect the minor's interests, and the court appoints the agent to help it perform its functions. And so I think this case presents the question, if the court's agent fails, does the court fail? And if the court fails, what is the remedy? And the remedy, we all know, when the court fails, is you bring those failures to the attention of the appellate court. You review those underlying court orders. And that, although there's no case law saying you can sue the guardian ad litem, there's plenty of case law where people are upset that the guardian ad litem did not represent the minor's interests. And when that happens, what this court has said in the McCarthy case, in the Stunn's case, in the Clark case, is you review the underlying orders, and you see were the child's interests protected. And if they weren't, those orders become voidable, and they can be set aside. The In Re Guardianship of Hines case from the Third District, which we cite in our brief, is a good example where the guardians requested a $5,000 disbursement. Over two years later, the minor said that they had actually, the parents had actually been reimbursed by the insurance company for those $5,000 payments. And the court, under Section 1401, set those aside and ordered the guardian to reimburse the estate. So there are many mechanisms by which the guardian, the child could have recovered for the alleged negligence of the guardian ad litem. And what the court has to do today is weigh the risks. There's a risk of, if you have immunity, potentially you get negligent guardian ad litem. And that's not in the interest of children. But on the other hand, if you remove the immunity, there's a risk that the guardian ad litem starts to become clouded in his judgments. And that's the underlying policy behind judicial immunity and quasi-judicial immunity. And that's why the Brend case and the Davidson case found that child representatives who do have an advocacy role for the child were subject to quasi-judicial immunity. Because at the end of the day, as Bren said in Paragraph 36 of its opinion, those determinations and those advocacy roles of a child representative are to help the court make a neutral determination about the child's best interests. So if we're going to remove the immunity, we're going to change how the guardian ad litem acts potentially. We're going to increase the cost of the guardian ad litem to the court and to the minor. And we may even cause the judge to hesitate appointing the guardian ad litem in the first place. And so we have to weigh what really is in the best interest of the child. And so the choice between protecting children and shielding negligent attorneys is not the right choice, because it's our view that preserving immunity actually does serve to protect the children for all those reasons. So if there's no more questions, we would ask that you reverse the appellate court. Thank you. Thank you, Mr. Green. Case number 123990, Nichols v. Ferenkamp, will be taken under advisement as agenda number four. Mr. Green, Mr. Blok-Bagul, we thank you for your arguments today. You are excused.